UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| ERICE LANEHEART, 421361 | CIVIL ACTION |
| VERSUS | NO. 21-443 |
| STATE OF LOUISIANA | SECTION "E"(2) |

### REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing § 2254 Cases. Upon review of the entire record, I have determined that a federal evidentiary hearing is unnecessary.[1] For the following reasons, I recommend that the petition for habeas corpus relief be **DISMISSED WITH PREJUDICE** as time-barred.

**I.    FACTUAL BACKGROUND**

Petitioner Erice Laneheart is a convicted inmate incarcerated in the David Wade Correctional Center in Homer, Louisiana.[2] Laneheart was charged by a bill of information in Orleans Parish with attempted second degree murder.[3] Laneheart pled not guilty on February 23, 2011.[4] The Louisiana Fourth Circuit Court of Appeal summarized the established facts as follows:

> At approximately 10:00 p.m. on October 27, 2010, the defendant shot the twenty-one-year-old victim, Roderick Clanton, who was standing in front of his grandmother's house at the intersection of Washington Avenue and Danneel Street.

---

[1] A district court may hold an evidentiary hearing only when the petitioner shows either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable (28 U.S.C. § 2254(e)(2)(A)(i)) or the claim relies on a factual basis that could not have been previously discovered by exercise of due diligence (*id*. § 2254(e)(2)(A)(ii)) *and* the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner. *Id*. § 2254(e)(2)(B).
[2] ECF No. 5, at 1.
[3] State Record Volume (hereinafter "St. R. Vol.") 1 of 3, at 27, Bill of Information, 2/11/11.
[4] *Id*. at 26, Min. Entry, 2/23/11.

1

A passerby drove the victim to Touro Infirmary, where he was treated for multiple gunshot wounds.

At trial, the victim testified that on the night of the shooting, he was standing on the sidewalk in front of his grandmother's house with an acquaintance he knew as "Joe." Though it was late, the victim's grandmother had her porch light on and there was street lighting in the area. While he was outside, the victim observed a man, whom he knew as "Four," ride by on a bicycle. He explained that both he and "Four" lived in the same housing development, and that he had known "Four" all of his life.

Shortly thereafter, the victim saw "Four" again on the bicycle, but he had changed his clothes. He was now wearing all black. While the victim was talking to Joe, he heard "Four" utter, "Say." In response, the victim turned his head to the left; where he observed "Four" begin to shoot at him. He continued to observe "Four" shoot at him, between five and seven times in all, until he fell on the ground. Once the shooting ceased, "Four" rode away on his bike towards Danneel Street; meanwhile, the victim was taken to the hospital.

After arriving at the hospital, the victim met with Detective Matthew McCleary of the New Orleans Police Department. He informed the detective that a man he knew only as "Four" shot him. He further explained that "Four" could be identified as the person who was shot at the same corner in June of 2009. Using a reference log of shootings kept by the Sixth District of the New Orleans Police Department, Detective McCleary was able to identify the defendant, Erice Laneheart, as the person who was shot on June 25, 2009. While in the hospital, Detective McCleary presented the victim with a single photograph of the defendant, whom he swiftly identified as his shooter.[5]

Laneheart went to trial before a judge on January 19, 2012, and was found guilty.[6] The trial court sentenced Laneheart to fifty years imprisonment at hard labor to be served without the benefit of parole, probation or suspension of sentence.[7] The State filed a multiple bill, and, at the conclusion of a multiple offender hearing, the trial court adjudicated him a second felony offender and sentenced him to 100 years at hard labor to be served without benefits.[8]

---

[5] *State v. Laneheart*, 135 So. 3d 1221, 1225-26 (La. App. 4th Cir. 2/26/14) (footnote omitted); St. R. Vol. 2 of 3, 4th Cir. Opinion, 2012-KA-1580, at 3-4, 2/26/14.
[6] St. R. Vol. 2 of 3, at 13-14, Trial Mins., 1/19/12; St. R. Vol. 2 of 3, Trial Tr. at 133, 1/19/12.
[7] St. R. Vol. 1 of 3, at 8, Sentencing Mins., 3/7/12; St. R. Vol. 2 of 3, Sentencing & Multiple Bill Tr. at 5, 3/7/12.
[8] St. R. Vol. 1 of 3, at 7, Multiple Bill Hearing Mins., 3/7/12; St. R. Vol. 2 of 3, at 36, Multiple Bill, 2/24/12; *id.*, Sentencing & Multiple Bill Tr. at 17-18, 3/7/12.

Laneheart filed an untimely, counseled notice of appeal on April 24, 2012.[9] Laneheart's appointed counsel asserted three assignments of error: (1) insufficient evidence; (2) excessive sentence; (3) ineffective assistance of counsel in failing to object to his sentence or file a motion to reconsider.[10]

On February 26, 2014, the Louisiana Fourth Circuit affirmed Laneheart's conviction and sentence.[11] The court initially found, that while Laneheart failed to file a timely motion for appeal, the State failed to object to his untimely appeal and dismissing his appeal to allow him to properly seek reinstatement of his appeal rights would delay the proceedings.[12] The court determined that there was sufficient evidence to support his conviction.[13] The court also found that Laneheart was precluded from raising a claim of excessive sentence.[14] The court concluded that Laneheart's counsel's failure to object or to file a motion to reconsider sentence did not prejudice Laneheart so as to render his assistance ineffective.[15] On October 24, 2014, the Louisiana Supreme Court denied Laneheart's related writ application without reasons.[16]

On April 17, 2015, Laneheart filed a pro se application for post-conviction relief asserting two claims:

> (1) his trial counsel was ineffective for failing to present a material witness, a person named "Joe," in a motion for new trial; and
>
> (2) the State failed to disclose an agreement with the victim, Roderick Clanton.[17]

---

[9] St. R. Vol. 2 of 3, at 34, Notice of Appeal, 4/24/12.
[10] St. R. Vol. 2 of 3, Appellate Brief, 2012-KA-1580, 12/3/12.
[11] *State v. Laneheart*, 135 So. 3d 1221 (La. App. 4th Cir. 2/26/14); St. R. Vol. 2 of 3, 4th Cir. Opinion, 2012-KA-1580, 2/26/14.
[12] *Laneheart*, 135 So. 3d at 1225; St. R. Vol. 2 of 3, 4th Cir. Opinion, 2012-KA-1580, at 2-3, 2/26/14.
[13] *Id.* at 1226-28; St. R. Vol. 2 of 3, 4th Cir. Opinion, 2012-KA-1580, at 4-9, 2/26/14.
[14] *Id.* at 1228; St. R. Vol. 2 of 3, 4th Cir. Opinion, 2012-KA-1580, at 9, 2/26/14.
[15] *Id.* at 1229-31; St. R. Vol. 2 of 3, 4th Cir. Opinion, 2012-KA-1580, at 9-14, 2/26/14.
[16] *State v. Laneheart*, 151 So. 3d 601 (La. 10/24/14).; St. R. Vol. 2 of 3, La. Sup. Ct. Order, 2014-KO-0638, 10/24/14; *id.*, La. Sup. Ct. Writ Application, 14 KO 638, 3/25/14.
[17] St. R. Vol. 1 of 3, at 55-78, Memorandum in Support of Post-Conviction Relief Application, 4/17/15.

On March 22, 2016, Laneheart filed a supplemental memorandum.[18] On February 7, 2018, the trial court ordered trial counsel to submit an affidavit regarding the allegations of ineffective counsel.[19] On April 13, 2018, trial counsel submitted an affidavit.[20] On May 3, 2018, the trial court appointed an attorney to represent Laneheart.[21] On August 30, 2018, the trial court held a hearing on Laneheart's application for post-conviction relief at which both trial counsel and Laneheart testified.[22] At the conclusion of the hearing, the trial court found that trial counsel "did not locate a man named Joe."[23] On November 2, 2018, the trial court denied Laneheart's ineffective assistance of counsel claim and dismissed his second claim.[24]

On December 3, 2018, Laneheart filed a writ application to the Louisiana Fourth Circuit Court of Appeal.[25] On March 20, 2019, the Louisiana Fourth Circuit denied Laneheart's writ application.[26] On May 8, 2019, the Fourth Circuit, while granting rehearing, denied Laneheart's writ application finding that the district court did not err in concluding that Laneheart had not demonstrated that he received constitutionally ineffective assistance of counsel.[27] On June 26, 2019, Laneheart filed an untimely writ application at the Louisiana Supreme Court.[28] In the writ application to the Louisiana Supreme Court, Laneheart did not submit the claims in his application for post-conviction relief for review; rather, he argued only that the Louisiana Fourth Circuit erred

---

[18] St. R. Vol. 1 of 3, at 79-121, Memorandum in Support of Supplemental Application for Post-Conviction Relief, 3/22/16.
[19] *Id.* at 4, Docket Master Entry, 2/7/18.
[20] *Id.* at 123, Affidavit of Martin E. Regan, Jr., 4/12/18.
[21] *Id*. at 5, Docket Master Entry, 5/3/18.
[22] *Id* . at 5, Docket Master Entry, 8/30/18.
[23] *Id.*
[24] *Id.* at 5, Docket Master Entry, 11/2/18; St. R. Vol. 3 of 3, PCR Ruling, 11/2/18.
[25] St. R. Vol. 3 of 3, 4th Cir. Writ Application, 2018-K-1031, 12/3/18.
[26] *Id.*, La. 4th Cir. Order, 2018-K-1031, 3/20/19.
[27] *State v. Laneheart*, No. 2018-K-1031, 2019 WL 2034288 (La. App. 4th Cir. 5/8/19); St. R. Vol. 3 of 3, La. 4th Cir. Order, 2018-K-1031, 5/8/19.
[28] St. R. Vol. 3 of 3, La. Sup. Ct. Writ Application, 19 KH 1254, 6/26/19.

in ruling before he filed his supplemental brief.[29] On October 21, 2019, the Louisiana Supreme Court denied the writ application, finding it to be untimely filed pursuant to La. S. Ct. R. X § 5.[30]

## II.    FEDERAL HABEAS PETITION

On February 14, 2021, Laneheart filed a petition for federal habeas corpus relief styled under 28 U.S.C. § 2254 and challenged his current custody.[31] Laneheart asserts the following claims before the court:

> (1) his trial counsel was ineffective in failing to file a motion for new trial based on newly discovered evidence in the form of a material witness known as "Joe;" and
>
> (2) the State failed to disclose an agreement with Roderick Clanton in exchange for his testimony at trial.[32]

The State filed a response in opposition to Laneheart's petition and asserted (1) that the petition was not timely filed and (2) that Laneheart failed to exhaust his claims.[33] Despite being given two extensions to file a reply to the State's opposition,[34] to date, Laneheart has not filed one.

## III.    LAW AND ANALYSIS

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, comprehensively revised federal habeas corpus legislation, including 28

---

[29] *Id.*, at 2-9.
[30] *State v. Laneheart*, 280 So. 3d 1167(La. 10/21/19); St. R. Vol. 3 of 3, La. Sup. Ct. Order, 2019-KH-01254, 10/21/19.
[31] ECF No. 5. Laneheart's original, deficient petition was received and filed by the Clerk of Court on March 2, 2021. The pleading was undated and unsigned. ECF No. 5-1, at 15. The postmarked date is illegible, although the correctional center stamped the envelope on February 25, 2021. *Id.* at 17. The resubmitted petition includes Laneheart's signature and the date February 14, 2021. ECF No. 5, at 2. Allowing Laneheart the greatest possible benefit, February 14, 2021 is considered the filing date.
[32] ECF No. 5-1, at 5, 7; ECF No. 5-2, at 2, 3-15.
[33] ECF No. 17, at 4-6.
[34] ECF Nos. 19, 21.

U.S.C. § 2254. The AEDPA went into effect on April 24, 1996,[35] and applies to habeas petitions filed after that date.[36] Laneheart's petition is deemed filed on February 14, 2021.[37]

### A.   **Preliminary Considerations**

The two threshold questions in habeas review under the amended statute are (1) whether the petition is timely and (2) whether petitioner's claims were adjudicated on the merits in state court. In other words, has the petitioner exhausted state court remedies and is the petitioner in "procedural default" on a claim.[38] The State claims that Laneheart failed to exhaust both of his claims in that he did not give the Louisiana Supreme Court a fair opportunity to adjudicate them.[39] The State also claims that Laneheart's federal habeas petition was not timely filed because it was not filed within one year after finality of his conviction.[40]

For the reasons that follow, the State's limitations defense is supported by the record. Laneheart's petition was not timely filed under the AEDPA, and therefore, it should be dismissed with prejudice as time-barred. Alternatively, the claims are unexhausted and procedurally barred.

---

[35] The AEDPA was signed into law on that date and did not specify an effective date for its non-capital habeas corpus amendments. Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law. *United States v. Sherrod*, 964 F.2d 1501, 1505 (5th Cir. 1992).

[36] *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)).

[37] The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting *pro se*. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. *Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999); *Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998); *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995). As previously noted, Laneheart did not sign or date his original petition. ECF No. 1, at 15. However, the corresponding envelope was stamped by the correctional facility on February 25, 2021. *Id.*, at 1, 17. Upon resubmitting his petition to correct the deficiencies, Laneheart dated his signature February 14, 2021. ECF No. 5, at 2. Giving Laneheart the benefit of the doubt, February 14, 2021 is considered the filing date.

[38] *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

[39] ECF No. 17, at 6.

[40] *Id.* at 3-5.

B.   **AEDPA Statute of Limitations**

The AEDPA requires that a § 2254 petition must ordinarily be filed within one year of the date the conviction became final.[41] Laneheart's conviction was final on April 6, 2012, when he failed to timely file a direct appeal of his conviction and sentence thirty (30) days after his sentencing. Applying § 2244 literally, Laneheart had one year from finality of his conviction, or until April 6, 2013, to file his federal habeas corpus petition. Laneheart did not file his federal habeas corpus petition within this one-year period.

Accordingly, his petition must be dismissed as untimely, unless the one-year statute of limitations was interrupted or otherwise tolled under one of the following two ways recognized in the applicable law.

1. **Statutory Tolling**

The AEDPA provides for suspension of its one-year limitations period: "The time during which a *properly filed application for State post-conviction or other collateral review* with respect

---

[41] *Duncan v. Walker*, 533 U.S. 167, 179-80 (2001). The statute of limitations provision of the AEDPA in 28 U.S.C. § 2244(d) provides for other triggers:

(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of--
A.   the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
B.   the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State actions;
C.   the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
D.   the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

Sections (d)(1)(B), (C) and (D) do not apply here.

to the pertinent judgment or claim is pending *shall not be counted* toward any period of limitation under this subsection."[42] The Supreme Court has described this provision as a tolling statute.[43]

By its plain language, this provision does not create a new, full, one-year term within which a federal habeas petition may be filed at the conclusion of state court post-conviction proceedings.[44] Rather, as the United States Fifth Circuit and other federal courts have held, because this statute is a tolling provision, the time during which state court post-conviction proceedings are pending must merely be subtracted from the one-year limitations period:

> [Section] 2244(d)(2) provides that the period during which a properly filed state habeas application is pending must be excluded when calculating the one[-]year period. Under the plain language of the statute, any time that passed between the time that [petitioner's] conviction became final and the time that his state application for habeas corpus was properly filed must be counted against the one year period of limitation.[45]

For a post-conviction application to be considered "properly filed" within the meaning of § 2244(d)(2), the applicant must "'conform with a state's applicable procedural filing requirements,'" such as timeliness and location of filing.[46] The timeliness consideration in Louisiana, for purposes of the AEDPA, requires application of a prison mailbox rule to state pleadings filed *pro se* by a prisoner.[47] I have applied that rule where necessary to Laneheart's state court pleadings delineated in the procedural history.

---

[42] 28 U.S.C. § 2244(d)(2) (emphasis added).
[43] *Duncan*, 533 U.S. at 175-78.
[44] *Flanagan*, 154 F.3d at 199 n.1.
[45] *Id.*; *Brisbane v. Beshears*, 161 F.3d 1, 1998 WL 609926, at *1 (4th Cir. Aug. 27, 1998); *Gray v. Waters*, 26 F. Supp. 2d 771, 771-72 (D. Md. 1998).
[46] *Pace v. DiGuglielmo*, 544 U.S. 408, 414 (2005) ("When a postconviction application is untimely under state law, 'that [is] the end of the matter' for purposes of § 2244(d)(2)"); *Williams v. Cain*, 217 F.3d 303, 306-307 n.4 (5th Cir. 2000) (quoting *Villegas v. Johnson*, 184 F.3d 467, 469 (5th Cir. 1999)); *Smith v. Ward*, 209 F.3d 383, 384-85 (5th Cir. 2000).
[47] *Causey v. Cain*, 450 F.3d 601, 604-05 (5th Cir. 2006).

A matter is "pending" for § 2244(d)(2) purposes "as long as the ordinary state collateral review process is 'in continuance.'"[48] The phrase "other collateral review" in the statute refers to state court proceedings challenging the pertinent judgment subsequently challenged in the federal habeas petition.[49] A "pertinent judgment or claim" requires that the state court filings for which tolling is sought must have challenged the same conviction being challenged in the federal habeas corpus petition and must have addressed the same substantive claims being raised in the federal habeas corpus petition.[50]

As calculated in the first manner above, Laneheart's conviction was final under federal law on April 6, 2012, which was thirty (30) days after his sentencing when he did not seek direct review.[51] The AEDPA limitations period began to run the next day, April 7, 2012, and continued without interruption for seventeen (17) days until Laneheart filed his tardy notice of appeal on April 24, 2012. Construing Laneheart's notice of appeal as an application for state post-conviction or other collateral review, as the State suggests,[52] the limitations period was tolled from April 24, 2012 until January 22, 2015, when he did not file a writ application with the United States Supreme Court after the Louisiana Supreme Court denied his related writ application.[53]

Thus, the time began to run again on January 23, 2015 and ran another eighty-four (84) days until April 17, 2015 when Laneheart filed his application for post-conviction relief. Statutory

---

[48] *Carey v. Saffold*, 536 U.S. 214, 219-20 (2002); *Williams*, 217 F.3d at 310 (a matter is "pending" for § 2244(d)(2) purposes until "'further appellate review [is] unavailable under [Louisiana's] procedures.'")
[49] *Dillworth v. Johnson*, 215 F.3d 497, 501 (5th Cir. 2000) (state habeas petition challenging a prior conviction in one county was other collateral review even though filed as a challenge to a second conviction in a different county); *Nara v. Frank*, No. 99-3364, 2001 WL 995164, at *5 (3d Cir. Aug. 30, 2001) (motion to withdraw a guilty plea is "other collateral review").
[50] *Godfrey v. Dretke*, 396 F.3d 681, 686-88 (5th Cir. 2005).
[51] *See* LA. CODE CRIM. P. art 914(B)(1) (providing that a motion for appeal must be made no later than thirty (30) days after the judgment or ruling from which the appeal is taken).
[52] ECF. No. 17, at 4.
[53] *Ott v. Johnson*, 192 F.3d 510, 513 (5th Cir. 1999) (time for filing for certiorari with the U.S. Supreme Court is included in the finality determination under 28 U.S.C. § 2244(d)(1)(A)); U.S. Sup. Ct. Rule 13(1).

9

tolling then began again on April 17, 2015. Statutory tolling continued during the time his "properly filed" application remained "pending" in the state district court, that is, until relief was denied on November 21, 2018. Thereafter, state post-conviction proceedings remained "pending" before the Louisiana Fourth Circuit when Laneheart properly filed his writ application which was denied on rehearing on May 8, 2019.

Laneheart's limitations began to run again on June 8, 2019, when he did not timely file a writ application to the Louisiana Supreme Court.[54] At that point, he had two-hundred and sixty-four (264) days remaining. While Laneheart submitted a writ application to the Louisiana Supreme Court on June 26, 2019, his application was not "properly filed" because it was untimely pursuant to La. S. Ct. R. X § 5 and could not be "pending" as post-conviction review for purposes of the AEDPA's statute of limitations and tolling doctrines.[55] The AEDPA time limitation expired on February 27, 2020.

Laneheart's federal petition is deemed filed on February 14, 2021, under the applicable mailbox rule. This was three hundred and fifty-three (353) days after the AEDPA one-year filing period expired on February 27, 2020.

---

[54] *See Grillette v. Warden, Winn Correctional Center*, 372 F.3d 765, 769-71 (5th Cir. 2004) (a state application ceases to be pending when the time for supervisory review expires); *Romero v. Cain*, 6:14-cv-1164, 2015 WL 237166, at *5 (W.D. La. Jan. 16, 2015) ("Statutory tolling under § 2244(d)(2) ceased, at the latest, on July 27, 2013 when petitioner failed to meet the Rule X, § 5(a) thirty-day deadline to seek the next level of post-conviction review in a proper and timely fashion, which rendered his application no longer 'pending.'") (citation omitted).

[55] *Williams v. Cain*, 217 F.3d 303, 309-11 (5th Cir. 2000) (writ application that failed to comply with Rule X § 5 was not "properly filed" and did not toll the time limitation); *accord Boston v. Stinson*, No. 16-3643, 2016 WL 7735222, at *6 (E.D. La. Oct. 26, 2016), *R.&R. adopted*, 2017 WL 117893 (E.D. La. Jan. 11, 2017); *see also Jenkins v. Cooper*, No. 07-0216, 2009 WL 1870874, *5 (E.D. La. June 26, 2009) (holding that a petitioner does not benefit from any statutory tolling for an untimely writ application filed in the Louisiana Supreme Court because "[a] writ application which fails to comply with La. Sup. Ct. Rule X 5(a) is not properly filed because it is untimely, and it is not pending post-conviction review for purposes of the . . . statute of limitations and tolling doctrines").

Accordingly, Laneheart's federal petition was *not* timely filed and must be dismissed with prejudice for that reason.

### 2. No Equitable Tolling Warranted

The United States Supreme Court has held that AEDPA's one-year statute of limitations period in § 2244(d)(1) may be equitably tolled only when the petitioner has pursued his rights diligently and rare or extraordinary circumstances exist that prevented timely filing.[56] Equitable tolling is warranted only in situations during which a petitioner was actively misled or prevented in some extraordinary way from asserting his rights.[57] A petitioner bears the burden of proof to establish entitlement to equitable tolling.[58]

A prisoner's *pro se* status does not constitute rare and exceptional circumstances warranting equitable tolling.[59] In addition, the fact that Laneheart has asserted ineffective assistance of trial counsel does not excuse his untimely federal filing. The United States Supreme Court's holdings in *Martinez v. Ryan*,[60] and *Trevino v. Thaler*[61], and their progeny, simply do not provide a basis for review of Laneheart's untimely filed federal petition.

In *Martinez v. Ryan*, the Court held that a state-imposed "*procedural default* will not bar a federal habeas court from hearing a substantial claim of ineffective assistance of counsel at trial if,

---

[56] *Pace*, 544 U.S. at 418; *Jones v. Lumpkin*, --- F.4th ----, 2022 WL 43169, at * 3 (5th Cir. Jan. 5, 2022) (citing *Davis v. Johnson*, 158 F.3d 806, 810 (5th Cir. 1998)); *Fisher v. Johnson*, 174 F.3d 710, 713 (5th Cir. 1999); *Cantu-Tzin v. Johnson*, 162 F.3d 295, 299 (5th Cir. 1998); *Davis v. Johnson*, 158 F.3d 806, 810 (5th Cir. 1998).
[57] *Pace*, 544 U.S. at 418-19; *Cousin v. Lensing*, 310 F.3d 843, 848 (5th Cir. 2002).
[58] *Alexander v. Cockrell*, 294 F.3d 626, 629 (5th Cir. 2002).
[59] *See, e.g.*, *United States v. Petty*, 530 F.3d 361, 365 (5th Cir. 2008) ("Proceeding pro se is alone insufficient to equitably toll the AEDPA statute of limitations."); *Felder v. Johnson*, 204 F.3d 168, 171 (5th Cir. 2000) ("[P]roceeding pro se is not a 'rare and exceptional' circumstance [warranting equitable tolling] because it is typical of those bringing a § 2254 claim."); *Turner v. Johnson*, 177 F.3d 390, 392 (5th Cir. 1999) ("[N]either a plaintiff's unfamiliarity with the legal process nor his lack of representation during the applicable filing period merits equitable tolling.").
[60] 566 U.S. 1 (2012).
[61] 569 U.S. 413 (2013).

in the [State's] initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective."[62] In *Trevino v. Thaler*, the Supreme Court held that *Martinez* applies where "the [state] procedural system — as a matter of its structure, design, and operation — does not offer most defendants a meaningful opportunity to present a claim of ineffective assistance of trial counsel on direct appeal."[63] In this case, however, the bar at issue arises from Laneheart's failure to meet the *federal* limitations deadline under the AEDPA, not any state procedural rule. The *Martinez* and *Trevino* opinions also do not constitute new rules of constitutional law made retroactive on collateral review that would start a new one-year filing period under the AEDPA.[64] Thus, neither *Martinez* nor *Trevino* excuses Laneheart's untimely filing of his federal habeas petition.[65]

Laneheart has asserted no reason that might constitute rare or exceptional circumstances why the one-year statute of limitations period should be considered equitably tolled in his case, and I can find none. The record does not establish any other circumstances that might fit the restrictive boundaries of "exceptional circumstances" described in binding precedent to warrant equitable tolling in this case.[66] Laneheart, therefore, is not entitled to equitable tolling of the one-year AEDPA filing period.

---

[62] 566 U.S. at 17 (emphasis added).
[63] 569 U.S. at 1921.
[64] *See In re Paredes*, 587 F. App'x 805, 813 5th Cir. 2014) ("... the Supreme Court has not made either *Martinez* or *Trevino* retroactive to cases on collateral review, within the meaning of 28 U.S.C. § 2244."); *Adams v. Thaler*, 679 F.3d 312, 322 n.6 (5th Cir. 2012).
[65] *See Arthur v. Thomas*, 739 F.3d 611, 631 (11th Cir. 2014) ("Thus, we also hold that the reasoning of the *Martinez* rule does not apply to AEDPA's limitations period in § 2254 cases or any potential tolling of that period."); *Smith v. Rogers*, No. 14-0482, 2014 WL 2972884, at * 1 (W.D. La. Jul. 2, 2014); *Falls v. Cain*, No. 13-5091, 2014 WL 2702380, at *3 (E.D. La. Jun. 13, 2014) (Order adopting Report).
[66] *See Holland v. Florida*, 560 U.S. 631, 651-54 (2010) (equitable tolling warranted where attorney was grossly negligent and failed to meet professional standards of care when he ignored client's requests to timely file a federal petition and failed for years to response to client's letters or communicate with client); *Hardy v. Quarterman*, 577 F.3d 596, 599-600 (5th Cir. 2009) (equitable tolling warranted for significant state-created delay when, for almost one year, state appeals court failed in its duty under Texas law to

### 3. Actual Innocence

A petitioner can overcome the one-year statute of limitations imposed by the AEDPA if he can establish "actual innocence." In *McQuiggin v. Perkins*, the Supreme Court held that "actual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar . . . or, as in this case, expiration of the statute of limitations."[67] The Court allows this exception to prevent a "fundamental miscarriage of justice."[68] However, the Court cautions that "tenable actual innocence gateways are rare: '[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.'"[69]

Laneheart does not invoke *McQuiggin* nor does petitioner make the required showing. As the United States Supreme Court has explained: "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial. Because such evidence is obviously unavailable in the vast majority

---

inform petitioner that his state habeas petition had been denied despite his persistent requests, and petitioner diligently pursued federal habeas relief); *United States v. Wynn*, 292 F.3d 226 (5th Cir. 2002) (tolling warranted when defendant was deceived by attorney into believing that timely motion to vacate was filed); *Coleman*, 184 F.3d at 402 ("A garden variety claim of excusable neglect does not support equitable tolling."); *Fisher*, 174 F.3d at 715 (tolling not justified during petitioner's 17-days in psychiatric ward where he was confined, medicated, separated from his glasses and rendered legally blind, and denied meaningful access to the courts); *Cantu-Tzin*, 162 F.3d at 300 (State's alleged failure to appoint competent habeas counsel did not justify tolling); *Davis*, 158 F.3d at 808 n.2 (assuming without deciding that equitable tolling was warranted when federal district court thrice extended deadline to file habeas corpus petition beyond expiration of the AEDPA grace period).

[67] 569 U.S. 383, 386 (2013).
[68] *Id.* at 392.
[69] *Id.* at 386 (quoting *Schlup v. Delo*, 513 U.S. 298, 329 (1995)).

13

of cases, claims of actual innocence are rarely successful."[70]  In fact, "in virtually every case, the allegation of actual innocence has been summarily rejected."[71]

Here, Laneheart has not met the rigorous burden of proof imposed under the actual innocence exception.  While he claims a person named "Joe" witnessed the shooting and would testify that Laneheart was not the perpetrator, Laneheart fails to provide an affidavit from the alleged witness or even provide Joe's last name.  Notably, Laneheart's trial counsel was unable to locate *any* witness who would exonerate Laneheart.[72]  Laneheart's claim of an eyewitness, who has yet to be found, does not constitute reliable new evidence of his factual innocence that could rise to the level such that no reasonable juror would have found Laneheart guilty.

Laneheart also claims the existence of new evidence that the prosecution entered into a deal with Clanton in exchange for his testimony.  He relies on evidence that, after Laneheart's trial, on March 1, 2012, Clanton pled guilty to illegal possession of a stolen vehicle pursuant to La. Rev. Stat. § 14:69(B)(1), and was sentenced to a five year suspended sentence.[73]  The State agreed to drop two counts of unauthorized use of a motor vehicle and not to file a multiple bill.[74]

Laneheart, however, provides no evidence of an actual "deal" or agreement between Clanton and the prosecution prior to Laneheart's trial.  Notably, the trial court was aware that Clanton had open charges at the time of his trial testimony and that he hoped to receive leniency in his case.  Specifically, at Laneheart's trial, Clanton admitted that he had open charges and that he was a multiple offender.[75]  He admitted that he had met with the prosecutor, but testified that

---

[70] *Schlup*, 513 U.S. at 324.
[71] *Calderon v. Thompson*, 523 U.S. 538, 559 (1998) (citation omitted).
[72] St. R. Vol. 1 of 3, at 123, Affidavit of Martin E. Regan, Jr., 4/12/18.
[73] ECF No. 5-3, at 10-11.
[74] *Id.* at 11.
[75] St. R. Vol. 2 of 3, Trial Tr., at 16, 53, 129, 1/19/12.

14

she had not promised him anything in relation to either Laneheart's case or Clanton's charges.[76] Clanton testified that he was hopeful that, after he testified, "something could potentially happen with [his] case" and that the State would "offer [him] something."[77] On rebuttal, Clanton again testified that he was hopeful that he could work something out with the prosecution as to his charges, but explained that he had identified Laneheart as his shooter before Clanton was charged.[78]

That Clanton in fact received leniency in his case does not establish Laneheart's factual innocence. Nor does Laneheart show that, based on this evidence, it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt. Significantly, Clanton was shot on October 27, 2010.[79] While he was still in the hospital, Clanton identified Laneheart as the person who shot him.[80] The charges against Clanton were filed on December 15, 2011, more than a year after Clanton initially identified Laneheart as the perpetrator.[81]

Laneheart has asserted no other excuse to avoid the expiration of the AEDPA limitations period. His federal petition, deemed filed February 14, 2021, was not timely filed and must be dismissed with prejudice for that reason.

    **C.**    <u>**Exhaustion/Technical Procedural Bar**</u>

The State alternatively argues that Laneheart's claims are unexhausted.[82] Because the claims would now be procedurally defaulted in state court, they are also procedurally barred from federal review.

---

[76] *Id.* at 16-17, 53-54.
[77] *Id.* at 16, 54.
[78] *Id.* at 129-30.
[79] *Id.* at 19-22.
[80] *Id.* at 23-26.
[81] ECF No. 5-3, at 10.
[82] ECF No. 17, at 6.

"Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights."[83]  The United States Supreme Court has explained:

> The exhaustion doctrine is principally designed to protect the state courts' role in the enforcement of federal law and prevent disruption of state judicial proceedings. Under our federal system, the federal and state courts are equally bound to guard and protect rights secured by the Constitution.  Because it would be unseemly in our dual system of government for a federal district court to upset a state court conviction without an opportunity to the state courts to correct a constitutional violation, federal courts apply the doctrine of comity, which teaches that one court should defer action on causes properly within its jurisdiction until the courts of another sovereignty with concurrent powers, and already cognizant of the litigation, have had an opportunity to pass upon the matter.[84]

"To exhaust, a petitioner must have fairly presented the substance of his claim to the state courts."[85]  Generally, the exhaustion requirement is satisfied only when the grounds urged in a federal petition were previously presented to the state's highest court in a procedurally proper manner according to state court rules.[86]  In Louisiana, the highest state court is the Louisiana Supreme Court.[87]

Here, it is beyond dispute that Laneheart did not present the claims in this application for post-conviction relief to the Louisiana Supreme Court.  Nor was his writ application filed in a procedurally proper manner.  Because the Louisiana Supreme Court expressly held that his writ application related to the denial of his application for post-conviction relief was untimely,

---

[83] *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (quotation marks omitted).
[84] *Rose v. Lundy*, 455 U.S. 509, 518 (1982) (citations, footnote, quotation marks, and brackets omitted).
[85] *Wilder v. Cockrell*, 274 F.3d 255, 259 (5th Cir. 2001) (internal quotation marks omitted).
[86] *Dupuy v. Butler*, 837 F.2d 699, 702 (5th Cir. 1988).
[87] *See* La. Const. art. V, § 5(A).

Laneheart has not "fairly presented" his claims to that court. As a result, the exhaustion requirement has not been met.[88]

Further, Laneheart's failure to exhaust his claims in state court presents an additional problem and basis for dismissal, i.e. a procedural bar in federal court. If, as is the case here, a "prisoner fail[ed] to exhaust available state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred," then the claims are likewise considered defaulted in federal court.[89] The state courts would no doubt deny any new attempt by Laneheart to assert the instant claims as procedurally barred. If he now tried to file a writ application with the Louisiana Supreme Court seeking review of the Louisiana Fourth Circuit Court of Appeal's 2019 ruling, that writ application would be dismissed as untimely.[90] Any new state post-conviction application attempting to reassert his claims would be both repetitive under LA. CODE CRIM. PROC. art. 930.4[91] and untimely under LA. CODE CRIM. PROC. art. 930.8.[92] As a result, federal relief is barred unless Laneheart

---

[88] *See, e.g.*, *Jackson v. Vannoy*, No. 17-00265, 2018 WL 1441154, at *7 (E.D. La. Feb. 27, 2018) ("[Petitioner]'s writ application to the Louisiana Supreme Court was not considered by the Court because it was not timely filed. It is clear that a claim presented in an untimely writ application has not been 'fairly presented' for exhaustion purposes. . . . Therefore, these . . . claims . . . were not presented to the Louisiana Supreme Court in a procedurally proper manner and cannot be considered to have been exhausted."), *R.&R. adopted*, 2018 WL 1409270 (E.D. La. Mar. 21, 2018), *appeal filed*, 19-30005, (5th Cir. Jan. 3, 2019).

[89] *Nobles v. Johnson*, 127 F.3d 409, 420 (5th Cir. 1997) (internal quotation marks omitted).

[90] *See* La S. Ct R. X, § 5(a) (providing that the writ "application shall be made within thirty days of the mailing of the notice of denial of rehearing or the judgment on rehearing," and that no extension of time will be granted).

[91] In pertinent part, that article provides:

> B. If the application alleges a claim of which the petitioner had knowledge and inexcusably failed to raise in the proceedings leading to conviction, the court shall deny relief.
> ....
> D. A successive application shall be dismissed if it fails to raise a new or different claim.

LA. CODE CRIM. PROC. art. 930.4.

[92] Article 930.8 generally requires that a petitioner file his post-conviction within two years of the date on which his conviction and sentence became final. Although there are exceptions provided in the article, those exceptions to do not appear to be applicable to Laneheart's claims.

demonstrates either (1) the existence of "cause" for his default and resulting "prejudice" or (2) that the Court's failure to address the claims would result in a "fundamental miscarriage of justice."[93]

"To establish cause for a procedural default, there must be something *external* to the petitioner, something that cannot fairly be attributed to him."[94] Laneheart has not established cause for his default, and, "[a]bsent a showing of cause, it is not necessary for the court to consider whether there is actual prejudice."[95]

Laneheart likewise has not shown that application of the procedural bar would result in a "fundamental miscarriage of justice." In order to establish a "fundamental miscarriage of justice," a petitioner must "make a persuasive showing that he is actually innocent of the charges against him. Essentially, Laneheart must show that, as a factual matter, he did not commit the crime for which he was convicted."[96] However, as already explained above in the discussion of timeliness, Laneheart has not made a colorable showing of actual innocence.

Accordingly, not only is Laneheart's federal application untimely, but his underlying claims also fail in any event because they are both unexhausted and procedurally barred.

## RECOMMENDATION

For the foregoing reasons, it is **RECOMMENDED** that Erice Laneheart's petition for issuance of a writ of habeas corpus under 28 U.S.C. § 2254 be **DISMISSED WITH PREJUDICE** as untimely.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days

---

[93] *See, e.g., Bagwell v. Dretke*, 372 F.3d 748, 756-57 (5th Cir. 2004).
[94] *Johnson v. Puckett*, 176 F.3d 809, 816 (5th Cir. 1999) (quotation marks omitted).
[95] *Martin v. Maxey*, 98 F.3d 844, 849 (5th Cir. 1996).
[96] *Finley v. Johnson*, 243 F.3d 215, 220 (5th Cir. 2001) (citations omitted).

after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.[97]

    New Orleans, Louisiana, this __3rd__ day of February, 2022.

*[signature]*
DONNA PHILLIPS CURRAULT
UNITED STATES MAGISTRATE JUDGE

---

[97] *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*) (citing 28 U.S.C. § 636(b)(1)). *Douglass* referred to the previously applicable ten-day period for filing of objections, which was extended to fourteen days by amendment effective December 1, 2009, 28 U.S.C. § 636(b)(1).